# In the United States Court of Federal Claims

Bid Protest
No. 17-1977C
(Filed Under Seal: January 22, 2018 | Reissued: January 29, 2018)[*]

|  |  |  |
|---|---|---|
| HESCO BASTION LTD., | ) | Keywords: Bid Protest; Corrective |
|  | ) | Action; Agency Needs; Reasonable |
|  | ) | Under the Circumstances. |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Defendant, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| JSF SYSTEMS, LLC, | ) |  |
|  | ) |  |
| Defendant-Intervenor. | ) |  |
|  | ) |  |

*Douglas C. Proxmire*, Venable LLP, Washington, DC, for Plaintiff. *Emily A. Unnasch* and *Chelsea B. Knudson*, Venable LLP, Washington, DC, Of Counsel.

*Robert C. Bigler*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Lisa L. Donahue*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *Maj. Allen Stewart*, Trial Attorney, U.S. Army Legal Service Agency, Ft. Belvoir, VA, Of Counsel.

*Thomas O. Mason*, Thompson Hine LLP, Washington, DC, for Defendant-Intervenor. *Francis E. Purcell, Jr.*, *Raymond C. McCann*, and *Joseph R. Berger*, Thompson Hine LLP, Washington, DC, Of Counsel.

---

[*] This Opinion and Order was originally issued under seal on January 22, 2018, and the parties were given the opportunity to request redactions. The parties have agreed that no redactions are necessary and this Opinion and Order is now reissued publicly in its original form.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiff HESCO Bastion Ltd. submitted a proposal in response to the United States Army's solicitation for the procurement of earth-filled blast-mitigation barriers for use on the Korean Peninsula. After the Army awarded the contract to Defendant-Intervenor JSF Systems, LLC, HESCO filed a protest before the Government Accountability Office (GAO). Thereafter, the Army concluded that its original solicitation was defective because, among other reasons, it was overly restrictive. It elected to take corrective action to address the identified defects and GAO, accordingly, dismissed HESCO's protest as academic. HESCO then filed the present action, in which it asserts that the corrective action the Army intends to take is overbroad and not rationally related to the defects the Army identified and that the Army's corrective action impermissibly advantages JSF Systems.

HESCO filed a motion for a preliminary injunction along with its complaint, which the Court scheduled for expedited briefing. An oral argument was held on the motion on January 16, 2018. During the oral argument, all parties agreed that because the entire administrative record is before the Court, the case is appropriate for disposition on cross-motions for judgment on the administrative record.

For the reasons set forth below, the Court concludes that HESCO's claims lack merit. For that reason, the Court directs the entry of judgment on the administrative record for the government and JSF Systems. HESCO's motion for a preliminary injunction is **DENIED** as moot.

**BACKGROUND**

**I.   Pre-Solicitation Activities**

In September 2016, the Seventh Air Force determined that four bases on the Korean Peninsula had a "validated emergent requirement for blast-mitigation measures."[1] Admin. R. (AR) Tab 1 at 1. It thus prepared an Emergent-Requirement Request for "earth-filled protection barrier systems, such as HESCO Barriers or similar products, to pre-stage at each location." Id.[2]

---

[1] The Air Force is the intended beneficiary of the barriers being procured, but the procurement has been and is being conducted by the Army's 411th Contracting Support Brigade. See AR Tab 11 at 171; see also id. Tab 4 at 29.

[2] According to the government, earth-filled protection barriers are "constructed of a wire mesh frame with a fabric liner." Def.'s Opp'n to Pl.'s Mot. for a Prelim. Inj. at 2, ECF No. 18. They are collapsible for transport. Id. "Once the barriers are deployed, they are filled with soil or other material, which provides structural integrity forming a barrier that provides blast protection." Id. (citing AR Tab 19a.3 at 385). According to HESCO, it is "the world leader in the design, manufacture, and delivery of protective barrier systems (primarily used in combat and flood protection scenarios . . . )." Compl. ¶ 10, ECF No. 1. "[P]rior to the development of the HESCO

These systems would "be used to mitigate identified observations of soft-target locations (e.g. tent city) on the bases, provide protective positions during attacks, and harden command and control centers for U.S. forces." Id.

In July 2017, the contracting officer then assigned to the procurement drafted a "FAR Part 6 Justification and Approval for Other Than Full and Open Competition" for a sole source procurement of earth-filled barriers to be supplied by plaintiff HESCO. Id. Tab 11. The contracting officer asserted that "only one responsible source [exists] and no other supplies or services will satisfy Agency requirements." Id. at 170 (capitalization altered). He noted that the Air Force had "determined the HESCO CART and RAID models offer[] the best storage and deployment option to invest in." Id. at 172. The contracting officer also described in detail the perceived advantages of the HESCO products with respect to their rapid deployability and their transportability. Id. at 172–73. Finally, he noted that the Air Force had conducted some market research, and that "[n]o other vendors provide equal items sought." Id. at 174. Nevertheless, the contracting officer stated that the Air Force would "continue to survey the market to determine if there are other contractors/products that can meet our requirement." Id. at 173.

Shortly afterwards, the Army's 411th Contracting Support Brigade issued a "Sources Sought" notice on behalf of the Seventh Air Force's Force Protection Division. In the notice, the Army stated that it was seeking sources that could provide "earth filled Blast Mitigation Barriers," which it described as HESCO CART and RAID products or their equivalents. Id. Tab 12 at 177–78. In mid-August 2017, three companies—HESCO, JSF Systems, and KoAm Partners Co., Ltd.—responded to the Sources Sought notice. See id. Tabs 18–20. HESCO identified its own patented CART and RAID products and JSF Systems identified its EBS 1 and EBS 7 products, which it asserted were equivalent to the HESCO products in terms of size, speed of deployment, and transportability. See id. Tab 18 at 377; id. Tab 19 at 378.

In the meantime, the Air Force continued to advocate that the Army obtain HESCO barriers through a sole source procurement. See id. Tab 21 at 431–34. On September 8, 2017, however, the Army's contracting officer found that a sole source procurement had not been adequately justified. See id. Tab 26 at 520. She determined, based upon the market research, including the responses the Army had received to the Sources Sought notice, that the "requirement for [e]arth-filled protection barrier systems can be met by a commercial item," and that, accordingly, FAR Part 12 competitive procedures would be used. Id.

## II. The Solicitation

On September 14, 2017, the Army issued the solicitation, which requested proposals for the provision of "Brand name (HESCO) or equal" earth-filled barriers for use in four locations in South Korea. Id. Tab 27 at 521–25. Specifically, the solicitation sought two types of earth-filled barriers: 1) "CART 4836 or Equal" barriers; and 2) "RAID 7H or equal" barriers. Id. at 523. As noted above, CART 4836 barriers and RAID 7H barriers are both patented HESCO products. See id. Tabs 2a, 2b. The solicitation identified the "Salient Characteristics" of the barriers as including the capability to deploy within sixty seconds and, for the second type of barrier being

---

product, 'sandbags' were traditionally used to serve this purpose." Id. The technical features of HESCO's CART and RAID models of earth-filled barriers are patented. See id. ¶ 47.

sought, a design that included rails built inside the shipping container (which is a patented feature of HESCO's RAID barriers). Id. Tab 27 at 525.

Under the solicitation, offerors were required to provide evidence of "experience with Government . . . in manufacturing the earth[-]filled Barriers" as a prime or subcontractor within the previous five years. Id. at 526. The solicitation also stated that offerors needed to submit "evidence of laboratory[,] environmental[,] and performance testing." Id. (capitalization altered).

The solicitation provided that the Army would evaluate offers based upon technical capability, price, and past performance. Id. at 527–28. The technical capability factor, in turn, had five sub-factors: 1) training; 2) prior experience as a prime or subcontractor; 3) evidence of laboratory, environmental, and performance testing; 4) documentation of testing by a government testing lab; and 5) ISO 9001:2008 certification. Id. As to price, the Army would evaluate offerors' prices using "[p]rice analysis . . . to determine if the proposed prices are fair and reasonable and if the prices are adequate [and] realistic . . . to fulfill the requirements." Id. at 528. As to past performance, the Army would evaluate offerors' past performance information and rate it either acceptable or unacceptable. Id. The Army planned to award the contract to the lowest-priced technically-acceptable offeror. Id. at 527.

### III.   Award to JSF Systems

On September 28, 2017, the contracting officer prepared a memorandum for the record summarizing her award determination. Id. Tab 48. She noted that the Air Force had initially proposed a sole source procurement, that the justification provided for the sole source procurement was not sufficient, and that after a Sources Sought notice was posted, the Air Force had "agreed that competition was in the best interest of the Government." Id. at 773. The contracting officer then noted that two offerors, JSF Systems and HESCO, had submitted proposals and satisfied the solicitation's requirements regarding technical capability, past performance, and price. Id. at 773–75. Because JSF Systems' price was lower, the contracting officer concluded that award to JSF Systems was "fair and reasonable and in the best interest of the Government." Id. at 775. On September 29, 2017, the Army formally awarded the contract to JSF Systems. Id. Tab 49.

### IV.   HESCO's GAO Protest

On October 10, 2017, HESCO filed a protest with GAO. Id. Tab 57 at 909. It asserted that the award to JSF Systems was "flawed and unreasonable" because the "Army failed to evaluate [the] proposals consistent[ly] with the Solicitation" and "improperly found JSF's proposal technically acceptable." Id. HESCO argued that "the Army unreasonably found that JSF could fulfill the Solicitation's RAID and CART product requirements despite the fact that HESCO does not believe there is any other contractor, including JSF, capable of manufacturing earth-filled barriers equal to HESCO's Brand Name RAID and CART products." Id. at 910 (footnote omitted). In particular, as HESCO explained in a subsequent November 20, 2017 letter, JSF's product did not meet two of the solicitation's salient characteristics—the sixty second maximum deployment requirement and the use of built-in rails for easy deployment. Id. Tab 69 at 1277.

4

HESCO's November 20, 2017 letter also included a supplemental protest ground. Id. Specifically, HESCO argued that the Army should also have found JSF Systems' proposal technically unacceptable because the ISO 9001:2008 certification it submitted for its partner organization Maccaferri had expired two years prior to the solicitation. Id. at 1290.

## V.   The Army Announces Its Intent to Take Corrective Action

On December 4, 2017, the Army, in a letter submitted to GAO, requested dismissal of HESCO's protests because the Army intended to "take corrective action in response to the supplemental protest." Id. Tab 73 at 1309. Specifically, the Army intended to: 1) terminate for convenience the purchase order to JSF Systems; 2) amend the solicitation "so that it better states the Agency's needs and clarifies some ambiguities"; 3) issue the amended solicitation to HESCO and JSF Systems; 4) evaluate all new quotes; and 5) issue a new purchase order to the offeror who submits the lowest-priced technically acceptable quote. Id.

In a memorandum prepared for the record by the contracting officer on the same day, she set forth the Army's rationale for taking corrective action in greater detail. Id. Tab 72 at 1306–08. She identified the four grounds for HESCO's GAO protest as the Army's failure to conduct a meaningful assessment of JSF's technical capability, prior experience, and past performance, as well as JSF Systems' failure to comply with the solicitation's requirement that it provide a current ISO 9001:2008 certification for Maccaferri. Id. at 1306. Then, reviewing the record of the procurement, the contracting officer "conclude[d] that the evaluation criteria may have been overly restrictive or ambiguous, and an expired ISO 9001:2008 certificate was submitted for Maccaferri and therefore corrective action is warranted." Id.

In particular, she found it appropriate for the Army to amend the solicitation "to remove the 60-second requirement and 'rails' feature as they are overly restrictive and not necessary for the requirement." Id. She noted that JSF Systems had stated in its proposal that its product used a grid structure that could be rapidly deployed by pulling it open. Id.

Additionally, the contracting officer pointed out that the proposals submitted by HESCO and JSF Systems had highlighted an ambiguity in the prior experience requirements. Id. at 1306–07. With respect to the past performance factor, the contracting officer concluded that "this evaluation factor is not well written and should not have been included because past performance is not normally included for supply buys." Id. at 1307. Finally, it appears that the contracting officer believed that the parties' contentions regarding the ISO certification also exposed an ambiguity as to whether "current certification is required, as well as whose certification is acceptable," and additional "specification . . . would significantly benefit the procurement process." Id.

The contracting officer concluded that "corrective action would benefit the procurement process" because "a better written solicitation will allow for a fairer opportunity for both parties" and "will facilitate a more complete and accurate contemporaneous record of evaluation." Id. She also wrote that "[a] better written solicitation will clearly reflect the true requirements of the Army and would therefore improve the procurement process." Id. Accordingly, the contracting officer summarized, "[b]ecause of the totality of ambiguities and error, the Army will amend the solicitation, provide JSF and HESCO with the amended solicitation, evaluate any modifications

of their quotes, and award to the Contractor with the Lowest Priced, Technically Acceptable Proposal." Id.

### VI. GAO Dismisses HESCO's Protests

On December 6, 2017, HESCO objected to the Army's notice of corrective action. Id. Tab 74 at 1312. It argued that the Army's corrective action was overly broad and not related to the ground on which HESCO filed its supplemental protest. Id. On December 7, 2017, and over HESCO's objection, GAO dismissed HESCO's protests as academic. Id. Tab 75 at 1322–23.

### VII. This Action

On December 19, 2017, HESCO filed its complaint in this court. ECF No. 1. In it, HESCO challenges the Army's corrective action as arbitrary, capricious, and an abuse of discretion. Specifically, it contends that the corrective action is "overly broad," "would serve no rational purpose," and "is intended solely to favor JSF." Compl. at 10–14. HESCO seeks a declaration that the corrective action is arbitrary, capricious, an abuse of discretion, and contrary to law and a permanent injunction "preventing the Army from revising the solicitation and allowing JSF to submit a revised proposal." Id. at 17.

HESCO filed a motion for a preliminary injunction along with its complaint. ECF No. 4. It sought an injunction preventing the Army from proceeding with its proposed corrective action while the Court resolved HESCO's bid protest. The Court imposed an expedited briefing schedule on HESCO's motion, during which the government filed the administrative record. See ECF No. 12.

Oral argument was held on HESCO's motion for a preliminary injunction on January 16, 2018. Id. At the oral argument, the parties agreed that the case was ready for a final decision on the merits based on the administrative record. Accordingly, the Court is treating the parties' memoranda in support of and in opposition to HESCO's motion for a preliminary injunction as cross-motions for judgment on the administrative record.

## DISCUSSION

### I. Subject Matter Jurisdiction

The Court of Federal Claims has jurisdiction over bid protests in accordance with the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 § 12, 28 U.S.C. § 1491(b). Specifically, the Court has the authority "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012) (observing that § 1491(b)(1) "grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement").

6

To possess standing to bring a bid protest, a plaintiff must be an "interested party"—i.e., an actual or prospective bidder (or offeror) who possesses a direct economic interest in the procurement. Sys. Application & Techs., Inc., 691 F.3d at 1382 (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). An offeror has a direct economic interest if it suffered a competitive injury or prejudice as a result of an alleged error in the procurement process. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "prejudice (or injury) is a necessary element of standing"); see also Weeks Marine, Inc., 575 F.3d at 1359.

Where an agency elects to take corrective action after the award of a contract, a party's challenge to that corrective action is considered a pre-award protest. Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 327 (2015); Sheridan Corp. v. United States, 95 Fed. Cl. 141, 147–49 (2010), appeal dismissed, 453 F. App'x 973 (Fed. Cir. 2011); see also Sys. Application & Techs., Inc., 691 F.3d at 1382 (noting that the protester had lodged "a pre-award protest against the Army's decision to resolicit proposals"). In a pre-award protest, to possess the direct economic interest necessary for standing, a protester must have suffered a non-trivial competitive injury that can be addressed by judicial relief. See Weeks Marine, Inc., 575 F.3d at 1361–62.

Here, HESCO has standing to pursue its protest. HESCO was an actual offeror on the original solicitation and is a prospective offeror on any new solicitation that the Army may issue as part of its corrective action. HESCO alleges that the Army erred by proposing to amend the solicitation and receive new proposals instead of re-evaluating the proposals HESCO and JSF Systems have already submitted against the requirements in the original solicitation. According to HESCO, if the Army was required to re-evaluate the proposals under the existing solicitation, then it would necessarily find JSF Systems' proposal not technically acceptable. The Army is instead issuing a new solicitation, which HESCO alleges will work to its disadvantage by relieving its competitor, JSF Systems, of requirements that its products would not be capable of meeting.

Accepting these allegations as true, as the Court must for purposes of determining subject matter jurisdiction, see Square One Armoring Serv., Inc., 123 Fed. Cl. at 323 (citing Digitalis Educ. Sols., Inc. v. United States, 97 Fed. Cl. 89, 94 (2011), aff'd, 664 F.3d 1380 (Fed. Cir. 2012)), HESCO has sufficiently demonstrated a non-trivial competitive injury resulting from the Army's decision to take corrective action. Its injury can be adequately addressed by an appropriate injunction should HESCO prevail. Accordingly, HESCO has standing and the Court has subject matter jurisdiction.

## II.     Legal Standards

### A.     Motions for Judgment on the Administrative Record

Pursuant to Rule 52.1 of the Rules of the Court of Federal Claims (RCFC), the Court reviews an agency's procurement decision based on the administrative record. Bannum, Inc. v. United States, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). The court makes "factual findings under RCFC [52.1] from the record evidence as if it were conducting a trial on the record." Id. at 1357.

Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

### B.  Standard of Review

#### 1.  Bid Protests Generally

In a bid protest, the Court reviews challenges to procurement decisions under the same standards used to evaluate agency actions under the Administrative Procedure Act, 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4) (stating that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5"). Thus, to successfully challenge an agency's procurement decision, a plaintiff must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Bannum, Inc., 404 F.3d at 1351.

This "highly deferential" standard of review "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)). Thus, the Court cannot substitute its judgment for that of the agency. See Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (holding that as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion" (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))). Instead, the Court's function is limited to "determin[ing] whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (quoting Latecoere Int'l, Inc. v. U.S. Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)); see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (court should review agency action to determine if the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action"). A disappointed offeror "bears a heavy burden" in attempting to show that a procuring agency's decision lacked a rational basis. Impresa Construzioni, 238 F.3d at 1338.

#### 2.  Corrective Actions

In assessing the propriety of an agency's corrective action, the court looks to whether the action to be taken is reasonable under the circumstances. WHR Grp., Inc. v. United States, 115 Fed. Cl. 386, 395–96 (2014). "[T]here [is] no universal test as to what constitutes appropriate corrective action," and "reasons unrelated to a defect in a solicitation" may "be grounds for corrective action." Id. at 397; but see Sheridan Corp., 95 Fed. Cl. at 151 (stating that "[t]o be reasonable, the agency's corrective action must be rationally related to the defect to be corrected"). "[C]ontracting officials in negotiated procurements have broad discretion to take

corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999) (quoting Rockville Mailing Serv., Inc., B-270161.2, 96-1 CPD ¶ 184 (Comp. Gen. Apr. 10, 1996)).

**III.    The Merits**

HESCO challenges the Army's decision to take corrective action by revising the solicitation to eliminate unduly restrictive requirements and clarify ambiguities, and by requesting new proposals. It asserts that the agency's conclusion that the original solicitation was overly restrictive is arbitrary and capricious and claims that the Army's real purpose in issuing a new solicitation is to give JSF Systems a second bite at the apple. See Pl.'s Reply in Supp. of Mot. for a Prelim. Inj. (Pl.'s Reply) at 3, ECF No. 21; see also Compl. ¶¶ 68–70 (arguing that "[t]he sole objective of the Army's corrective action" is to allow JSF Systems to "rehabilitate deficiencies in [its] quote" and then to "reaffirm the award to JSF"). These arguments are unpersuasive.

The solicitation in this case employed "brand name or equal" purchase descriptions. Pursuant to FAR 11.104(b), such descriptions "must include, in addition to the brand name, a general description of those salient physical, functional, or performance characteristics of the brand name item that an 'equal' item must meet to be acceptable for award." As with any specifications, the salient characteristics set forth in a "brand name or equal" procurement must be reasonably related to the agency's minimum needs and must not be unduly restrictive of competition. See G.H. Harlow Co., B-266049, 96-1 CPD ¶ 95 (Comp. Gen. Jan. 26, 1996) ("When a protester challenges a salient characteristic included in a brand name or equal solicitation as unduly restrictive of competition, we will review the record to determine whether the restrictions imposed are reasonably related to the contracting agency's minimum needs." (citation omitted)).[3]

The record in this case clearly supports the reasonableness of the Army's conclusion that at least two of the "salient characteristics" set forth in the original solicitation were more restrictive than necessary to meet the Army's needs. Thus, the solicitation identified the capability of deployment in sixty seconds or less as a "salient characteristic" of a HESCO-equivalent barrier. Similarly, the solicitation lists as a salient characteristic of RAID-equivalent barriers that they employ built-in rails "for easy deployment." AR Tab 27 at 525.

Upon consideration of JSF Systems' proposal in light of the concerns HESCO raised during its GAO protest, the contracting officer determined that the "60-second [deployment] requirement . . . [was] . . . overly restrictive and not necessary" to meet the agency's minimum need for barrier systems that can be rapidly deployed. See id. Tab 72 at 1306. Similarly, she

---

[3] Although GAO opinions are not binding on the Court of Federal Claims, the Court "may draw on GAO's opinions for its application of [its] expertise." See Allied Tech. Grp., Inc. v. United States, 649 F.3d. 1320, 1331 n.1 (Fed. Cir. 2011); see also Univ. Research Co., LLC v. United States, 65 Fed. Cl. 500, 503 (2005) (noting that GAO decisions are not binding on the court but "are persuasive").

9

concluded that the Army lacked a justification for requiring the barriers to have built-in rails as part of their design, where the Army had concluded that JSF Systems' barriers, which contained a grid structure, could also be easily deployed. See id.

HESCO's challenge to the contracting officer's conclusions lacks merit. It argues that the sixty-second maximum time period for deployment is essential because it provides an objective criterion for satisfying the "rapid deployment" requirement and because it enables the Air Force to quickly utilize the defense barriers in a time of military necessity. But "[d]etermining an agency's minimum needs 'is a matter within the broad discretion of agency officials . . . and is not for [the] court to second guess.'" Savantage Fin. Servs., Inc. v. United States, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004)) (omission and alteration in original). The Army, and not this Court or HESCO, is best-positioned to determine the maximum amount of time that can be spared to deploy the barriers consistent with military requirements.[4]

Further, HESCO provides no justification at all for requiring that the barriers the Army procures employ a design that includes built-in rails, a specific patented characteristic of HESCO's product. AR Tab 32 at 571. As noted, the contracting officer observed that JSF Systems' design, which used a grid, rather than built-in rails, was also capable of rapid deployment. The Army's determination—that function rather than design should be the measure of whether a product meets its needs—was eminently reasonable.

Indeed, HESCO's own claims about its products—that no other offeror could meet the solicitation requirements without infringing upon HESCO's intellectual property—support the reasonableness of the Army's decision to take corrective action. As noted above, "[c]ontracting officials in negotiated procurements have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." DGS Contract Serv., Inc., 43 Fed. Cl. at 238 (quoting Rockville Mailing Serv., Inc., B-270161.2, 96-1 CPD ¶ 184). Indeed, the Competition in Contracting Act "demands that agencies 'create specifications that solicit proposals in a manner designed to achieve full and open competition.'" Am. Safety Council, Inc. v. United States, 122 Fed. Cl. 426, 435 (2015) (quoting CW Gov't Travel, Inc. v. United States, 99 Fed. Cl. 666, 681 (2011)). It is therefore more than reasonable for an agency to closely scrutinize the requirements of a solicitation where it appears that they can only be met by a single offeror. In fact, its failure to do so could serve as the basis for a protest by other would-be offerors.

Finally, HESCO relies upon this Court's decision in Professional Service Industries, Inc. v. United States, 129 Fed. Cl. 190 (2016), in support of its argument that the government has failed to justify its decision to issue a new solicitation. See, e.g., Pl.'s Reply at 9–10. It contends that rather than remedying flaws in the solicitation, "the Army's corrective action merely seeks to conform the revised solicitation to remedy the flaws in JSF's original proposal." Id. at 3.

---

[4] The Court notes that even after the barriers are deployed, they must still be filled with earth or other material to provide protection and that process takes significantly more than one minute. See AR Tab 2a at 6; id. Tab 2b at 7; see also Oral Argument at 2:10:50–11:33; 2:27:17–27:47.

10

Professional Service Industries is inapposite. In that case, the Court was unable to find on the record before it that the agency's decision to modify certain technical requirements and issue a new solicitation was based on an assessment of the agency's actual needs. In fact, the Court concluded that the record was "devoid of evidence that the agency reviewed its needs, reasonably assessed them, and had a rational basis for deciding that the original solicitation did not meet them." Prof'l Serv. Indus., Inc., 129 Fed. Cl. at 207. It was for that reason that the Court suggested that the change appeared to be designed to conform the solicitation to the awardee's proposal. Here, in contrast and as discussed above, the administrative record clearly reveals that the reason the agency has decided to issue a new solicitation is that it concluded that the salient characteristics set forth in the original solicitation were too restrictive and not necessary to meet its minimum needs.

In conclusion, the Court finds that the Army's decision to take corrective action was neither arbitrary nor capricious, and was in accordance with law. HESCO's challenge to that decision therefore falls short, and judgment on the administrative record must be entered for the government and intervenor JSF Systems.[5]

**CONCLUSION**

For the reasons set forth above, the Clerk is directed to enter judgment for the government and JSF Systems on the administrative record. HESCO's motion for a preliminary injunction is **DENIED** as moot. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

[5] In addition to modifying the solicitation's salient characteristics, the Army has indicated that in the new solicitation it also intends to eliminate past performance requirements and address several perceived ambiguities in the prior solicitation. HESCO complains that these proposed changes are uncalled for and that the ambiguities identified are "manufactured" in order to give JSF Systems a second bite at the apple. See Pl.'s Reply at 9–10, 11–12. But given the Court's conclusion that it is reasonable for the Army to modify the solicitation to eliminate unduly restrictive requirements, it sees no reason why the agency should be precluded from modifying and clarifying other provisions in the solicitation that may be improper or ambiguous. And it rejects as unsupported by the record HESCO's claims that these changes are motivated by a desire to favor JSF Systems.